Hillsborough
No. 82-119

UNITED STATES FIDELITY & GUARANTY CO., INC.

v.

JOHNSON SHOES, INC.

March 24, 1983

150

*Wiggin & Nourie*, of Manchester (*Gregory A. Holmes* and *William S. Orcutt* on the brief, and *Mr. Orcutt* orally), for United States Fidelity & Guaranty Co., Inc.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Wilbur A. Glahn, III*, and *James C. Hood* on the brief, and *Mr. Glahn* orally), for the intervenor Eli Fishman.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Lee C. Nyquist* on the brief and orally), for the intervenor Cohas Realty Corporation.

DOUGLAS, J. This appeal involves issues arising out of a declaratory-judgment petition filed by United States Fidelity & Guaranty Co., Inc. (USF&G) to determine its obligation to provide coverage and to defend its insured, Johnson Shoes, Inc., in two underlying lawsuits. USF&G denied that it had a duty to provide coverage and to defend on two grounds: (1) that no "occurrence," as defined by the policy, had occurred during the coverage period; and (2) that the property damage was of the type explicitly excluded from coverage by the terms of the policy. We affirm the order of the trial court that USF&G must provide coverage and a defense in the underlying actions.

For a period of approximately twenty years preceding its termination of business in November 1972, Johnson Shoes, Inc. leased premises in Manchester from the intervenor Cohas Realty Corporation. During this twenty-year period, Johnson Shoes, Inc. had a comprehensive general liability policy with USF&G. The premises was unoccupied after Johnson Shoes, Inc. terminated its business in November 1972.

In August 1973, after a period of heavy rains, oil which had apparently escaped from an underground storage tank, located on the leased premises, spilled over onto neighboring property up to one-half mile away. Previously, in 1971, the maintenance man for Johnson Shoes, Inc. had reported to his superiors that he believed that the underground oil tank was leaking.

Cohas Realty Corporation, the owner of the leased premises, paid more than $200,000 to clean up the surrounding premises and the neighboring property, and then sued Johnson Shoes, Inc. for reimbursement of the clean-up expenses. In addition, Florence Duckoff, a principal in Cohas Realty Corporation, filed suit against Eli Fishman, in his capacity as a corporate officer and director of Johnson Shoes, Inc. and another corporation, for damages to the premises. Cohas Realty Corporation and Eli Fishman were permitted by the court to intervene in the declaratory-judgment action brought by USF&G because Johnson Shoes, Inc. had gone bankrupt and failed to make an appearance.

After a hearing in February 1982 on the petition for declaratory judgment, the Superior Court (*Flynn*, J.) ruled that USF&G was obligated to defend Johnson Shoes, Inc. and Eli Fishman in the two underlying lawsuits, and to provide coverage for damage to property other than the leased premises. On February 23, 1982, Cohas Realty Corporation requested a clarification of the court's findings of fact made during the hearing. In response to this request, the court ruled that all findings of fact made during the declaratory-judgment proceeding were "for the purpose of reaching a decision on . . . [USF&G's] petition with respect to policy coverage and are not intended to be controlling in the underlying civil actions."

USF&G argues that the trial court erred when it ordered the insurer to assume the defense of the actions against its insured based upon facts alleged in the underlying writs, without allowing the introduction of extrinsic evidence to supplement the allegations. It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring

it within the express terms of the policy, even though the suit may eventually be found to be without merit. *Hersey v. Maryland Casualty Co.*, 102 N.H. 541, 542–43, 162 A.2d 160, 162 (1960). The duty of an insurer to defend is not necessarily coextensive with its duty to pay. We draw a distinction, however, between groundless suits giving rise to the duty to defend, and actions which, even if successful, would not be within the policy and against which the insurer has no duty to defend. *Id.* at 543, 162 A.2d at 162.

In determining whether a duty to defend exists based upon the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *See Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982); *Lariviere v. New Hampshire Ins. Group*, 120 N.H. 168, 172, 413 A.2d 309, 312 (1980). In this case, the pertinent coverage provision of the insurance policy expressly obligates USF&G to defend Johnson Shoes, Inc. against improper lawsuits:

> "The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence, and *the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .*"

(Emphasis added.)

In our opinion, a reasonable person in the position of the insured would understand this provision as obligating the insurer to come to his defense in any action in which the pleadings alleged facts to bring it within the terms of the policy, unless some other provision of the policy barred coverage. We find that Johnson Shoes, Inc. would have had a reasonable expectation that USF&G would defend based on the express language of this provision of the policy. We find no error in the trial court's conclusion that USF&G's obligation to defend could be determined based upon the pleadings in the underlying actions. Furthermore, the record in this case shows that the trial court went well beyond the facts as alleged in the underlying writs, and heard extensive evidence regarding coverage under the policy.

USF&G contends that the trial court erred in finding that an "occurrence" had taken place during the policy period, and that cov-

erage was not excluded by the terms of the policy. The burden of establishing noncoverage is upon the insurer. *Robbins Auto Parts, Inc. v. Granite State Ins. Co.,* 121 N.H. 760, 764, 435 A.2d 507, 509 (1981); RSA 491:22-a (Supp. 1979).

The policy issued to Johnson Shoes, Inc. defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." USF&G argues that the evidence showed that the "occurrence" which gave rise to the underlying claims took place in August 1973, after the policy issued to Johnson Shoes, Inc. had been cancelled. The trial court found, based upon all the evidence, that the "occurrence" took place no later than November 1971, during the coverage period.

 Our function in reviewing the trial court's findings is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge. *Belknap Textiles, Inc. v. Belknap Industries, Inc.,* 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981). Upon review of the record, we find that there was sufficient evidence before the trial court to support its finding that the occurrence took place during the coverage period, and that USF&G failed to meet its burden of establishing noncoverage with regard to the timing of the occurrence.

We find no merit to USF&G's argument that the policy explicitly excluded coverage. USF&G relies upon an exclusion which states: "This insurance does not apply . . . to property damage to property in the care, custody or control of the Insured . . . ."

 Whether the property damage comes within this exclusion depends upon the sufficiency of the evidence that, at the time the property was damaged, it was in the possessory, and not merely the proprietary, control of the insured. *See Mead v. Travelers Ins. Co.,* 111 N.H. 27, 30, 274 A.2d 792, 794 (1971). Testimony before the trial court clearly supported a finding that in the underlying action by Cohas Realty Corporation against Johnson Shoes, Inc. the alleged property damage was to property beyond the leasehold of Johnson Shoes, Inc., and not in its "care, custody or control." The trial court also received into evidence a copy of the lease agreement between Cohas Realty Corporation and Johnson Shoes, Inc., from which it could have reasonably found that the property damage alleged in the action by Florence Duckoff against Eli Fishman was to property which was not in the possessory control of Johnson Shoes, Inc. Because there was sufficient evidence that the property damaged

was not in the possessory control of Johnson Shoes, Inc., the trial court properly concluded that the exclusion did not apply. We hold that the trial court properly ordered USF&G to provide coverage in the underlying actions for damage to property other than the leased premises.

USF&G argues that the trial court erred in ruling that all factual findings made in the declaratory-judgment action were not intended to control the underlying actions. It interprets this order to mean that the declaratory-judgment action does not collaterally estop the parties from relitigating issues that have already been fully litigated.

In raising this issue, USF&G misunderstands the effect of the trial court's order. By ruling that its findings of fact were limited to the declaratory-judgment action, the trial court determined that Johnson Shoes, Inc. did *not* exercise *exclusive* care, custody, or control over the damaged property, and thus the exclusion in the liability policy was inapplicable. This finding was made for the purpose of determining USF&G's duty to defend, if any, in the underlying lawsuits. The trial court recognized that the issue of whether Johnson Shoes, Inc. exercised control over the oil tank so as to trigger *potential liability* for the damaged property was entirely distinct and would have to be litigated in the underlying negligence actions. USF&G is correct that to the extent any issue was litigated and determined in the declaratory-judgment action, the doctrine of collateral estoppel bars the parties to the first action, or their privies, from relitigating the question in the underlying suits. *See Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1284 (1982). By making this statement, we draw no conclusions as to the collateral-estoppel effect of any of the trial court's particular findings, but we intend only to provide guidance during the impending litigation of the underlying lawsuits.

*Affirmed.*

All concurred.