### The P.J. NOYES COMPANY

v.

### AMERICAN MOTORISTS INSURANCE COMPANY.

No. C–93–103–L.

United States District Court,
D. New Hampshire.

March 29, 1994.

Order Denying Reconsideration
or Clarification July 12, 1994.

Eileen Fox, Steven E. Grill, Devine, Millimet & Branch, PA, Manchester, NH, for plaintiff.

Gary M. Burt, Wiggin & Nourie, Manchester, NH, for defendant.

## Order

LOUGHLIN, Senior District Judge.

Before the court is the plaintiff's Motion for Partial Summary Judgment (doc. # 8). For the reasons stated below the motion is granted in part and denied in part.

## Background

The plaintiff, P.J. Noyes Company Inc. ("Noyes"), is a New Hampshire corporation engaged in the manufacture and distribution of a variety of products including food pellets for laboratory animals. On May 10, 1991, Holton Industries filed suit against Noyes in the United States District Court for the District of New Jersey. The complaint alleged that Noyes intentionally infringed upon a trademark held by Holton by using the designation "Dustfree Precision Pellets" for its own product. Holton claimed that this practice constituted false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125, trademark infringement in violation 15 U.S.C. § 1114 and common law trademark infringement and unfair competition.

Noyes carried an American Motorists Insurance Company ("AMICO") general liability insurance policy from March 17, 1991 until March 17, 1992. The policy provides that AMICO will pay "those sums which the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage part applies." *See* Plaintiff's Exhibit B, p. 4. The policy further provides that AMICO has the duty to defend any suit for damages.

On November 5, 1991, Noyes notified AMICO of the Holton suit and requested that AMICO defend the suit. AMICO refused and on March 8, 1993, Noyes filed this action seeking a declaration that AMICO is obligated to defend Noyes in the underlying action and damages for breach of contract.

## Discussion

### A. Summary Judgment Standard

Summary judgment is proper only if, viewing the record in the light most favorable to

the non-moving party, the documents on file disclose no genuine issue of material fact. The moving party is then entitled to judgment as a matter of law. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988); Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.; Oliver,* 846 F.2d at 105. The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Oliver,* 846 F.2d at 105; Fed.R.Civ.P. 56(e).

### B. Obligation to Defend Underlying Action

In New Hampshire, the insurer is required to provide a defense for the insured for any suit that comes within the terms of the policy, even though the suit may ultimately be without merit. *United States Fidelity & Guaranty Co. v. Johnson Shoes, Inc.,* 123 N.H. 148, 152, 461 A.2d 85 (1983). The insurer's obligation to defend is determined by whether the pleadings sufficiently state facts which bring the suit within the express terms of the policy. *Id.* If the facts alleged in the complaint do not fall within the express terms of the policy yet do not clearly preclude coverage, the court may look beyond the pleadings. *See Happy House Amusement v. New Hampshire Insurance Company,* 135 N.H. 719, 722, 609 A.2d 1231 (1992). Any doubt must be resolved in favor of the insured. *Id.*

Whether a trademark infringement constitutes an advertising injury has not been addressed by the New Hampshire courts. In cases which have addressed this issue, the decision has turned on the connection between the infringement and advertising activity. *See J.A. Brundage Plumbing &*

*Roto–Rooter, Inc. v. Massachusetts Bay Ins., Co.,* 818 F.Supp. 553 (W.D.N.Y.1993) (servicemark infringement by use of mark in connection with advertising held to be advertising injury); *Sentry Insurance v. R.J. Weber Co.,* 2 F.3d 554 (5th Cir.1993) (copying and selling portion of company's lists did not constitute sufficient connection between infringement and advertising).

AMICO's obligation to defend rests upon a determination of whether the facts alleged in the complaint fall within the definition of an advertising injury. In their complaint, Holton alleged three counts: false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125; trademark infringement in violation of 15 U.S.C. § 1114; and common law trademark infringement and unfair competition. Holton alleged that Noyes "intentionally sought to trade upon the well-known *reputation and good will of Holton's Trademark Right and to pass off its products as* those of Holton." *See* Defendant's Exhibit B. Holton requested the New Jersey District Court to order Noyes to relinquish all "packages, literature, labels, advertising and other materials" which infringe upon Holton's trademark. AMICO argues that these actions do not constitute an advertising injury within the meaning of the policy.

The AMICO policy defines advertising injury as:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

*See* Plaintiff's Exhibit B at 9.

The facts alleged in the complaint, are clearly not encompassed within subparts a or b of the definition of advertising injury. However, the allegation that Noyes used the name "Dustfree Precision Pellets" in their advertising, literature and packaging, arguably falls within the ambit of misappropria-

tion of advertising ideas or style of doing business or infringement of a title or slogan.

AMICO argues that since the complaint failed to allege specific facts concerning Noyes' advertising activities, the action does not fall within the definition of advertising injury. AMICO asserts that the copy of an advertisement for "Dustfree Precision Pellets" attached to the complaint is insufficient to demonstrate an advertising injury. Instead, AMICO urges the court to view the action strictly as one for trademark infringement.

The court finds AMICO's argument unpersuasive. Although the underlying action is one for trademark infringement, the infringement occurred as a result of Noyes using the term "Dustfree Precision Pellets" in their advertisements. But for the use of the term in the packaging, literature and advertisements, there would have been no trademark infringement. Accordingly, the court finds that the underlying suit comes within the terms of the policy.

## C. Policy Exclusions

The AMICO policy excludes advertising injuries:

1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured ...

*See* Plaintiff's Exhibit B at 4.

■ AMICO argues that there is a material issue of fact as to whether the action against Noyes is for advertising published prior to the issuance of the policy and thus is excluded. In support of their assertion, AMICO submitted the Affidavit of David C. Hill, President of Noyes. In his affidavit, David Hill stated that Noyes first began using the designation "dustfree" and "dustless" in 1986 to describe their food pellets. AMICO asserts that the use of the term "dustfree" in

1986 raises a genuine issue of fact as to whether Noyes was infringing on the Holton trademark prior to the inception of the AMICO policy. The court agrees.

The affidavit of David Hill stated that Noyes began using the designation "dustfree" in 1986. Noyes later filed suit against Holton in May 1987 alleging trademark infringement and unfair competition. Holton filed a counterclaim seeking to enjoin Noyes from using the designation "dustfree". The affidavit stated that Noyes continued using the designation in reliance on a settlement agreement dated April 20, 1989. The settlement agreement did not restrict the use of the term "dustfree" and resolved all outstanding claims of the parties prior to the date of the agreement.

In reliance on the settlement agreement, Noyes used the designation "dustfree". However on June 7, 1990, Noyes received a letter from Holton's counsel which stated that use of the term "Dustfree Precision Pellets" was in violation of the Holton trademark. This dispute lead to Holton filing the underlying suit in May 1991. It is not clear from the complaint whether Holton based that action on publication of material using the designation "dustfree" which was circulated prior to March 17, 1991. Accordingly, the court finds that a genuine issue of material fact exists.

AMICO also asserts that the underlying suit is excluded from coverage on the grounds that Noyes was aware of the trademark infringement at the time the AMICO policy was issued. In support of this assertion AMICO cites the deposition of Robert Ballard, attorney for Holton in the previous litigation. In his deposition, Mr. Ballard states that use of the terms "dustless" or "dustfree" was left open at the time of the settlement agreement. Mr. Ballard stated that Noyes refused to sign a settlement agreement which restricted the use of those terms and that Holton had intended to consult a trademark attorney in order to obtain a trademark for that term. It was Noyes' position at the time, that Holton would be unable to obtain a trademark and that the terms were merely descriptive.

AMICO asserts that the deposition of Mr. Ballard presents a genuine issue of material fact as to whether Noyes was aware that use of the term would result in an action for trademark infringement. AMICO asserts that even if the deposition is insufficient to justify a denial of summary judgment, AMICO should be permitted to depose David Hill prior to a decision by the court on this issue.

Both the deposition of Mr. Ballard and the affidavit of Mr. Hill state that the use of the terms "dustless" or "dustfree" were unresolved at the time of the settlement agreement, nevertheless the parties agreed to settle without resolving the issue. The settlement agreement was signed on April 20, 1989 and the policy was issued on March 17, 1991. On June 7, 1990, more than nine months prior to the issuance of the policy, Noyes received a letter from Holton's counsel objecting to the use of the term "Dustfree Precision Pellets" as a violation of the Holton trademark issued April 10, 1990. Accordingly, the court finds that a genuine issue of material fact exists as to whether Noyes had knowledge at the time the AMICO policy was issued that their use of the term "dustfree" would result in a subsequent action for trademark infringement.

AMICO also argues that the underlying suit is excluded from coverage on the grounds that the relief requested is preventive. AMICO argues that the injunctive relief sought by Holton is analogous to the EPA injunction in *Coakley v. Maine Bonding and Casualty Co.*, 136 N.H. 402, 618 A.2d 777 (1992). In *Coakley,* the court held that the insurer was not required to compensate the insured for the cost of complying with an EPA injunction. The court distinguished between remedial costs which were compensable and preventive costs which were not. AMICO asserts that since Holton seeks injunctive relief as well as damages, AMICO would not be required to indemnify Noyes and therefore should not be obligated to defend the action. AMICO further asserts that since Holton seeks treble damages pursuant to 15 U.S.C. § 1117, it is specifically excluded from the policy pursuant to the penal statute exclusion.

In their complaint, Holton seeks to enjoin Noyes from violation of their trademark; to pay over all profits derived from use of the trademark; treble damages pursuant to 15 U.S.C. § 1117 and return of all packages, labels and advertising which bear the trademark. AMICO is required to defend Noyes in the underlying action if even one of several claims falls within the scope of the policy. *White Mountain Cable Constr. Corp. v. Transamerica Ins., Co.,* 137 N.H. 478, 482–83 (1993). Consequently, even if the court accepted AMICO's argument that coverage was excluded for injunctive relief or treble damages, AMICO would still be required to defend based on the claim for return of profits.

### Conclusion

The court grants the plaintiff's Motion for Summary Judgment in part finding that the underlying action for trademark infringement falls within the terms of the policy. The court denies the motion in part finding that there is a genuine issue of material fact as to whether policy exclusions apply. The court finds that issues of fact exist as to whether Noyes had knowledge that the use of the designation "dustfree" would result in subsequent litigation and whether the advertisements were printed prior to the issuance of the policy. The court finds that coverage is not excluded on the basis of the penal statute exclusion or on the grounds that the relief is preventive.

### ORDER

Before the court is Defendant's Request for Reconsideration and/or Clarification (doc. # 15). On March 29, 1994, the court granted in part plaintiff's Motion for Summary Judgment (doc. # 13). The court held that a genuine issue of material fact existed as to the applicability of a policy exclusion which precludes coverage for advertising injuries "[A]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period..." *See* Plaintiff's Exhibit B at 4. The defendant contends that the court erred in its finding and that the exclusion does not operate to bar coverage in this case.

The basis of the underlying action against Noyes is one for trademark infringement involving the use of the term "dustfree" in the description of their food pellets. The defendant contends that Noyes first published material which used this term in 1986. Noyes was the named insured on policies issued by the defendant since 1989. The policy containing the above exclusion ran from March 17, 1991 until March 17, 1992, however the defendant concedes that a policy containing the same exclusion was in place on April 10, 1990. The defendant asserts that since the term "dustfree" was first published prior to the inception of the policy, the above exclusion should apply.

The defendant contends that it is the fact that the term was published prior to the policy triggers the exclusion and that the court erred in finding that a material issue of fact existed as to whether it was the use of the term prior to the policy period which gave rise to the underlying lawsuit. This argument is not persuasive. The exclusion only bars coverage for advertising injuries "arising out of" material published prior to the policy. The material issue of fact in this case is from which published material does the underlying suit arise. Consequently, precisely which materials form the basis of the underlying suit and the dates of those publications remain a material issue in this case.

Noyes first began using the designation "dustfree" in 1986. That use formed the basis of a counterclaim in a suit brought against them by Noyes. Holton sought to enjoin Noyes from using the designation "dustfree" in the description of their product. A settlement agreement was reached in April, 1989 and Noyes continued to use the designation "dustfree" in reliance on that agreement. On June 7, 1990, Noyes was notified by Holton's counsel that Noyes was in violation of the Holton trademark. That trademark was received by Holton on April 10, 1989.

It remains unclear precisely which documents containing the designation "dustfree" form the basis for the underlying action against Noyes. Since Holton did not obtain a trademark until April 1989, it appears that the infringement could not have taken place until at least that time. In their Objection to Defendant's Request for Reconsideration and/or Clarification, Noyes contends that the suit is based on advertisements published in early 1991. Accordingly, there remains a genuine issue of fact as to publication date of the material which forms the basis of the trademark infringement and under which policy Noyes is seeking coverage.

The defendant also contends that the duty to defend Noyes in the underlying action extends only those claims by Holton for lost profit. The defendant asserts that Noyes should be required to reimburse them for costs incurred relative to injunctive relief. The claims against Noyes in the underlying suit by Holton consist of two counts of trademark infringement in violation of 15 U.S.C. §§ 1125, 1114 and one count of common law trademark infringement and unfair competition. In their request for relief, Holton seeks to enjoin Noyes from further use of the designation "dustfree", to pay over all profits resulting from the use of the term, treble damages pursuant to 15 U.S.C. § 1117. and delivery of all packages and literature containing the term "dustfree."

The court has found that all three counts fall within the defendant's duty to defend. Holton is seeking remedial relief in the form of damages and return of all material containing the designation "dustfree." The fact that Holton additionally seeks to enjoin Noyes from future use of the term does not relieve the defendant from the obligation to defend Noyes. The defendant is required to defend against all three counts and the relief requested in connection with those claims. The types of relief requested are inextricably intertwined making it impossible to differentiate the costs.

The court hereby finds that there is a genuine issue of material fact as to the time of publication of the material which forms the basis of the underlying suit. The court also finds that the defendant is obligated to defend Noyes in the underlying suit. Accordingly, the Defendant's Motion for Reconsid-

498

eration and/or Clarification (doc. # 15) is denied.