Hillsborough-southern judicial district
No. 2002-729

PREFERRED NATIONAL INSURANCE COMPANY

v.

DOCUSEARCH, INC. *& a.*

Argued: June 12, 2003
Opinion Issued: August 19, 2003

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *James R. Fox* on the brief, and *Mr. Fox* orally), for the petitioner.

*Gottesman & Hollis, P.A.*, of Nashua (*David M. Gottesman* and *Anna Barbara Hantz* on the brief, and *Mr. Gottesman* orally), for the respondents.

DALIANIS, J. In this declaratory judgment action, the respondents, Docusearch, Inc. (Docusearch) and Helen Remsburg, appeal an order of the Superior Court (*Hampsey*, J.) granting summary judgment in favor of the petitioner, Preferred National Insurance Company (Preferred). We affirm in part, reverse in part and remand.

Preferred sought a declaratory judgment that it is under no obligation to defend or indemnify Docusearch in a lawsuit filed by Remsburg, Administratrix of the Estate of Amy Lynn Boyer, in the United States

District Court for the District of New Hampshire, *Helen Remsburg, Administratrix v. Docusearch, Inc.*, No. C-00-211-B, because the damages alleged by Remsburg arose out of an act excluded by the insurance policy. The claims made by Remsburg and the facts underlying the complaint are detailed in *Remsburg v. Docusearch*, 149 N.H. 148, 151-53 (2003), and need only briefly be summarized here. Liam Youens contacted Docusearch and requested the date of birth, social security number and place of employment for Amy Lynn Boyer. Docusearch failed to provide Boyer's date of birth, but provided Youens with her social security number and place of employment. On October 15, 1999, Youens drove to Boyer's workplace and fatally shot her as she left work. Youens then shot and killed himself.

The disputed insurance policy issued by Preferred to Docusearch provides commercial general liability coverage for bodily injury and property damage (Coverage A), as well as personal and advertising injury damage (Coverage B). Coverage A provides that the insurer will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Coverage B provides that the insurer will pay "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." "Personal and advertising injury" means "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . e. Oral or written publication of material that violates a person's right to privacy."

The policy also includes a "Detective or Patrol Agency Endorsement" (detective endorsement), which modifies the commercial general liability coverage and provides "coverage for sums which you become legally obligated to pay because of any Negligent Act, Error or Omission committed during the Policy Period in the conduct of . . . operations," subject to "those Exclusions already found in the Coverage Form."

The parties' dispute centers primarily upon the interpretation of an "Assault & Battery Endorsement" attached to the policy, which provides:

> [T]he policy to which this endorsement is attached, is amended and modified as follows:

> Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage, and the Company is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages:

1. Assault and Battery or any act or omission in connection with the prevention or suppression of such acts;

. . . .

Regardless of degree of culpability or intent and without regard to:

A. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents, or servants; or by any person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person . . . .

Preferred filed a motion for summary judgment arguing that the assault and battery endorsement excluded coverage because the claimed damages arose out of Youens' assault and battery. The trial court granted the motion, finding that the respondents "failed to rebut, with evidence sufficient to raise a genuine issue of material fact, Preferred's showing that the exclusive source of the underlying plaintiff's injuries (and therefore [the] claims) was the murder of Amy Boyer and its attendant excluded acts." On appeal, the respondents argue that the trial court erred in: (1) concluding that the assault and battery endorsement excluded coverage for bodily injury claims where the harm alleged was caused by the insured's negligence in disclosing information; and (2) applying the assault and battery endorsement to exclude claims brought under either Coverage B or the detective endorsement.

In its brief, Preferred argues that the trial court erred by applying New Hampshire law, rather than Florida law, to interpret the policy. Preferred has not cross-appealed the trial court's ruling that New Hampshire law applies, however, and thus has waived its choice of law argument. *See Federal Bake Shop v. Farmington Cas. Co.*, 144 N.H. 40, 43 (1999). Accordingly, we address the respondents' arguments under New Hampshire law.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *See Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537 (1997). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation and brackets omitted). Pursuant to RSA 491:22-a (1997), "the burden of proving lack of insurance coverage is on the insurer." *Maville v. Peerless Ins. Co.*, 141 N.H. 317, 320 (1996) (quotation omitted).

The interpretation of the language of an insurance policy is a question of law for this court to decide. *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41 (1994). We take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole. *Id.* An insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy. *Martin v. Me. Mut. Fire Ins. Co.*, 145 N.H. 498, 500 (2000). An insurance company is free to limit its liability through clear and unambiguous policy language. *Ross v. Home Ins. Co.*, 146 N.H. 468, 471 (2001).

The respondents argue that Preferred has a duty to defend and indemnify Docusearch against Remsburg's negligence claim. The claim alleges that Docusearch negligently disseminated information by providing Boyer's social security number and place of employment to Youens, who allegedly used the information in connection with his murder of Boyer. The claim alleges "damages including but not limited to the fear, anxiety and mental and physical pain suffered by Amy Lynn Boyer as she lay dying, the reasonable expenses occasioned to the estate by her death, the loss of the probable duration of her life but for her death."

The respondents argue that the assault and battery endorsement does not apply to the negligence claim because the damages alleged arose from the insured's negligence, not from an assault and battery. Preferred counters that the exclusion applies because the negligence claim alleges damages comprised solely of bodily injuries arising from Youens' assault and battery.

We disagree with the respondents' contention that Preferred's obligations under the policy are determined solely by the actions of the insured. Damages are an essential part of a negligence claim. *Ross*, 146 N.H. at 472. Thus, where the damages arise entirely out of an act that would not be covered under an insurance policy, the negligence claim is not one that would be covered under the policy. *Id.* We applied this principle in *Ross* where we held that the insured was not covered by his insurance policy for claims of negligent hiring and supervision because the underlying damages arose out of a rape which was not covered under the policy. *Id.* Other courts have applied a similar rule in interpreting exclusionary clauses similar to the one at issue here. *See, e.g., Stiglich v. Tracks, D.C., Inc.*, 721 F. Supp. 1386, 1388 (D.C. 1989) (no coverage for negligence claim because proof of excluded act necessary to make the claim); *Perrine Food Retailers v. Odyssey LTD.*, 721 So. 2d 402, 404 (Fla. Dist. Ct. App. 1998) (no coverage for negligence claim where exclusion

precluded coverage for all claims arising out of an assault and battery); *Ross v. City of Minneapolis*, 408 N.W.2d 910, 913-14 (Minn. Ct. App. 1987) (negligence claim causally connected to assault and battery unambiguously excluded by assault and battery exclusion); *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341, 343-44 (Mo. Ct. App. 2000) (exclusionary language specifically stating that coverage does not apply to bodily injuries arising out of assault or battery includes negligence actions that arise out of the excluded act).

The respondents argue that our reasoning in *Ross* does not apply to the present case because the policy at issue in *Ross* was a professional liability policy rather than a general liability policy. While we agree with the respondents' contention that different policy types serve different purposes, we do not share the respondents' interpretation of *Ross*. Our analysis in *Ross* concerned whether the policy covered the act which caused the damages, not whether the policy was of a particular type. *See Ross*, 146 N.H. at 472.

Moreover, in *Ross*, we cited *Winnacunnet v. National Union*, 84 F.3d 32, 38 (1st Cir. 1996), which held that an insurer had no duty to provide coverage under an errors and omissions policy because the complaint against the insured alleged only damages that arose out of an uncovered act. In *Winnacunnet*, the complaint against the insured sought damages for the insured's negligent hiring and supervision of an employee. *Id.* at 33-34. The plaintiffs claimed that the insured's negligence resulted in "inappropriate relationships and dangerous effects," and alleged a variety of damages. *Id.* at 34. The court found, however, that all the claimed damages were the result of the murder of the employee's husband. *Id.* at 37. Because the policy at issue excluded coverage for "any claim arising out of . . . assault or battery" as well as "any claim arising out of bodily injury to, or . . . death of any person," *id.* at 34, the court concluded that the complaint alleged damages arising entirely out of an act — the murder — that was excluded under the policy and denied coverage. *Id.* at 37.

■ Similarly, here, the negligence claim alleges damages arising entirely from Youens' assault and battery against Boyer. The respondents have failed to allege any damage from the alleged negligence other than Boyer's bodily injuries inflicted by Youens. Remsburg could not prevail on the negligence claim without proving damages from Boyer's murder. *Cf. Ross*, 146 N.H. at 472; *Winnacunnet*, 84 F.3d at 36. Thus, because the damages arose out of the assault and battery which is excluded by the assault and battery endorsement, the respondents' negligence claim is excluded as well. *See Ross*, 146 N.H. at 472.

We find support for our conclusion in the broad language of the policy itself. The assault and battery endorsement expressly excludes claims for damages arising from assault and battery by the insured or *any other person*. Courts interpreting comparably broad exclusionary clauses have typically denied coverage in cases similar to the one which we face here. *Compare Liquor Liab. JUA v. Heritage Ins. Co.*, 644 N.E.2d 964, 967 n.4 (Mass. 1995) (citing cases denying coverage under similarly worded exclusionary clauses), *with Bd. of Educ. v. Nat. Union Fire Ins.*, 709 A.2d 910, 914 (Pa. Super. Ct. 1998) (finding coverage where exclusions "do not by their terms apply to the conduct of a non-insured").

■ The respondents argue that the assault and battery endorsement, if read to exclude coverage for the insured's negligence in this case, removes coverage for the principal activity of the insured's operations for which the premium was paid. We disagree. Excluding claims for damages arising from assault and battery does not entirely remove coverage for the risks against which Docusearch insured itself. Rather, the exclusion merely singles out a particular risk. Moreover, while we agree with the respondents that the policy's detective endorsement is intended to insure Docusearch against liability arising out of mistakes inherent in the practice of its profession, *see Watkins Glen Cent. v. Nat. Union Fire*, 732 N.Y.S.2d 70, 72 (App. Div. 2001), we disagree that Preferred is not permitted to limit this coverage to certain types of risks with clear and unambiguous language, *see Ross*, 146 N.H. at 471. Given the variety of harms risked by the dissemination of information, we cannot conclude, as the respondents urge, that excluding a certain type of bodily injury from coverage "would wholly vitiate coverage and frustrate the reasonable expectations of the insured." *Watkins Glen Cent.*, 732 N.Y.S.2d at 71.

■ Nor do we agree that section 493.6110, Florida Statutes (2002), which requires a private investigator to carry comprehensive general liability for "death, bodily injury, property damage, and personal injury" to be licensed in Florida, necessitates a finding of coverage here. Section 493.6110 does not require that an *insurer* provide a particular type of coverage, but rather places a duty upon private investigators to make sure they have obtained comprehensive liability coverage consistent with the statute in order to be licensed. *See Southern Adj. v. American Bankers Ins.*, 723 So. 2d 285, 286 (Fla. Dist. Ct. App. 1998). Regardless of whether the coverage obtained by Docusearch complies with the statute, nothing in the statute required Preferred to provide coverage for damages for bodily injuries arising from assault and battery. *See id.*

The respondents next argue that the assault and battery endorsement applies only to Coverage A, and does not preclude coverage under either

the "consequential 'bodily injury'" coverage of Coverage B or the detective endorsement. They argue that because the assault and battery endorsement refers to "bodily injury and property damage," but does not refer to "personal and advertising injury," the exclusion does not apply to Coverage B. They further argue that because the detective endorsement is modified only by the exclusions contained within the coverage form, the assault and battery endorsement does not apply to that coverage. The respondents analogize this case to *Silverball Amusement v. Utah Home Fire Ins.*, 842 F. Supp. 1151 (W.D. Ark. 1994), in which the court stated that "[i]f there is an exclusion in one section but not in another, the court cannot rewrite the contract to place exclusions in both sections." *Id.* at 1159. A fair reading of the policy as a whole, however, does not support the respondents' arguments.

■ The assault and battery endorsement is not attached to a particular section of the policy and is not restricted to a certain type of coverage within the coverage form. Rather, the endorsement states, "the policy to which this endorsement is attached, is amended and modified as follows." Unlike an exclusion limited to a particular section within the policy, an endorsement attached to a policy must be read together with the entire policy. *See* 4 E. HOLMES, APPLEMAN ON INSURANCE 2D § 20.1, at 153 (1998). The endorsement excludes coverage for *any* action to recover damages for bodily injuries arising from assault and battery. Thus, the assault and battery endorsement excludes coverage under Coverage B for actions to recover damages for bodily injury in the same way that it does under Coverage A. Likewise, the assault and battery endorsement applies to the detective endorsement. The detective endorsement is modified by the exclusions found in the coverage form, which includes the attached assault and battery endorsement.

The respondents finally argue that Preferred must provide coverage under Coverage B for the invasion of privacy claim and the claim under the Consumer Protection Act, *see* RSA ch. 358-A (1995 & Supp. 2002). These claims allege other damages in addition to the damages arising from Boyer's bodily injuries caused by the assault and battery. The trial court did not specifically address these other damages but instead found that all the damages alleged in Remsburg's complaint were the result of the excluded assault and battery. We agree with the respondents that this was error.

■ An action for intrusion upon seclusion does not require a claimant to prove any harm beyond the intrusion itself. *See* RESTATEMENT (SECOND) OF TORTS § 652H comment *a* at 402 (1977) ("[O]ne who suffers an intrusion upon his solitude or seclusion . . . may recover damages for the deprivation

of his seclusion."). The invasion of privacy counts in the complaint included a claim for damages for the intrusion into Boyer's seclusion itself in addition to the claimed damages for her bodily injuries. Further, the Consumer Protection Act does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees. RSA 358-A:10, I (1995); *see Carter v. Lachance*, 146 N.H. 11, 14 (2001). Thus, while expressing no opinion as to whether Preferred has any obligations in relation to these claims, we reverse the trial court's application of the assault and battery endorsement to the extent that Remsburg has alleged damages unrelated to Boyer's bodily injuries.

Accordingly, we remand to the trial court for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.